JOSHUA A. ROSS & another *vs.* NATHANIEL TREMAIN.

Where an oral agreement was made for the sale of a messuage by A. to B. on certain conditions, and B. thereupon took possession thereof and made repairs thereon, and A. afterwards, pursuant to a new oral agreement between him and B. and C., conveyed the messuage to C. by a deed which was on a condition subsequent, conformable to the original agreement with B., and C. then took possession, but failed to fulfil the condition, and A. therefore reclaimed and recovered possession of the messuage, for condition broken ; it was *held*, that B. could not maintain an action against A. to recover pay for said repairs.

Where real estate is conveyed on a condition that the grantee shall discharge a mortgage previously made thereon by the grantor, and no time is mentioned or understood by the parties, at which the condition is to be performed, it must be performed in a reasonable time.

ASSUMPSIT to recover money expended in repairing a tavern house and other buildings of the defendant, situated in Lee. The case was tried before *Dewey*, J. from whose report it appeared that early in the year 1834, the plaintiffs, by an oral contract with the defendant, bought the said house, &c. and the land connected therewith, and received possession of the same. The property was then under a mortgage given by the defendant to the State of Connecticut, to secure a debt of $ 1700 ; and, according to said oral contract, the plaintiffs were to assume the payment of that mortgage, and " take off the defendant from said debt," and also to pay him $ 500. No time was agreed upon at which the defendant should be relieved from said debt, or receive the $ 500.

The plaintiffs remained in possession, under said contract, until the last of October 1834, when it was agreed between them and the defendant, and Joshua A. Barton, that Barton should " take the place of the plaintiffs in their contract with the defendant." No written agreement was produced in evidence, but one was referred to in a deed (hereinafter mentioned) of the tavern estate, given by the defendant to Barton. In this arrangement, the plaintiffs agreed to take Barton's house and land at the price of $ 900 ; the defendant was to give Barton a quitclaim deed of the tavern estate ; Barton was to assume the aforesaid debt of $ 1700, " and take the defendant off from that ; " and the plaintiffs were to secure the aforesaid $ 500 by

a mortgage on the Barton house and land. No time was agreed upon at which the several parts of this arrangement were to be carried into effect. The plaintiffs, the defendant, and Barton, went together to the office of F. Sturgis, Esquire, and the following deeds were there made and executed, viz. a quitclaim deed, from the defendant to Barton, of the tavern estate, dated October 30th, 834 ; a deed, from Barton to the plaintiffs, of his aforementioned house and land, dated October 29th, 1834, and a mortgage of the same by the plaintiffs to the defendant, to secure said sum of $ 500, also dated October 29th, 1834.

The said quitclaim deed from the defendant to Barton was made subject to the following condition : "Whereas the said Barton has this day executed to me his certain writing, promising to pay up the said mortgage to the State of Connecticut, and discharge me from the same ; now if the said Barton fails to perform said promise, this deed is to be and remain in all respects null and void."

All these deeds were left with said Sturgis. The deed from the defendant to Barton was delivered then or soon afterwards. The other two deeds were not to be delivered until Barton should arrange the Connecticut debt of $ 1700 ; and Barton testified that he never delivered the deed of his house and land.

Barton took immediate possession of the tavern estate, and the plaintiffs took possession of his said house and land. During the following winter, the agent of the State of Connecticut was at Lee, and required further security than Barton was then prepared to give, before he would consent to discharge the defendant from the $ 1700 debt. The defendant thereupon told Barton, that he might "let the matter remain until spring."

The repairs, for which this suit was brought, were made by the plaintiffs between April and November 1834, and while they were in possession of the tavern estate.

In the spring of 1835, the defendant and others attached Barton's property while he was absent from the Commonwealth ; and on his return, the defendant offered to give him $ 20, "if he would take him (the defendant) off from the Connecticut mortgage," and desired him to leave the tavern estate. Barton

afterwards told the defendant he might sue him for possession of that estate, and that, if he did not take off the Connecticut debt, he would pay the cost ; but if he did take it off, the defendant should pay the cost. The defendant sued Barton before a justice of the peace, and recovered judgment, on the 20th of October 1835, for possession of said estate.

Barton contracted with E. Prichard and H. Richmond, that they should fulfil his contract with the defendant ; and he gave the defendant notice of that contract. The defendant consented that they might so do. Barton, being afterwards taken sick, requested F. Sturgis, Esq. before mentioned, to act for him in carrying into effect the aforesaid contract with Prichard and Richmond. By the arrangement made by Sturgis, Prichard and Richmond were to fulfil Barton's contract with the defendant, and pay Barton $ 50. When Sturgis afterwards called on the defendant, the defendant said he would give $ 20 to be relieved from the Connecticut debt ; but he afterwards declined doing any thing with Prichard and Richmond concerning the matter ; saying that if $ 50 were to be made, he had as good a right to it as Barton.

Said Prichard testified that he informed the defendant that he would fulfil Barton's contract, and that he was ready and had the means to do it ; that the defendant thereupon claimed payment for some repairs that he had made on the tavern house, which Prichard agreed to allow ; and that the defendant then declined doing any thing further with Prichard and Richmond, unless they would take the mortgage made to him by the plaintiffs on Barton's house and land.

The deed from Barton to the plaintiffs of his house and land was recorded May 11th, 1835 ; and the mortgage of the same premises from the plaintiffs to the defendant was recorded November 13th, 1834. But Sturgis testified that he never delivered those deeds, wnich were left with him undelivered, when they were executed, as hereinbefore mentioned. The deed of the defendant to Barton was recorded November 13th, 1834. The defendant took possession of the tavern estate, on the first week in November 1835. His mortgage thereof to the State of

Connecticut has never been discharged or removed. A nonsuit was entered, subject to the opinion of the whole court, whether the jury would have been warranted in finding a verdict for the plaintiffs on the foregoing facts.

*Jones,* for the plaintiffs. As it was the fault of the defendant that the original contract failed, the plaintiffs are entitled to recover. *Kidder* v. *Hunt,* 1 Pick. 328. *James* v. *Bixby,* 11 Mass. 37. *Farmington Academy* v. *Allen,* 14 Mass. 175, 176. *Eames* v. *Savage,* 14 Mass. 425. The contract would have been fulfilled by Prichard and Richmond, if the defendant had not violated his agreement that they should take the place of Barton.

There has been no breach of the contract by Barton. As no time was fixed for performance, he had his life to fulfil it. *Eames* v. *Savage,* 14 Mass. 428.

*Porter,* for the defendant.

WILDE, J. Upon the facts reported, we think it very clear that this action cannot be maintained. It is an action of assumpsit to recover the plaintiffs' expenditures in making certain repairs and improvements in a messuage, the property of the defendant, but which he had contracted to convey to the plaintiffs for a stipulated price ; and thereupon the plaintiffs took possession of the premises, and continued their occupation during the time of making the said repairs. By the contract, which was not reduced to writing, the property was to be conveyed subject to a certain mortgage, which the plaintiffs agreed to pay, and to exonerate the defendant from his personal liability therefor. After the repairs and improvements were made, the plaintiffs agreed to transfer their right and interest under the contract to one Barton, and to this transfer the defendant assented. And thereupon the defendant executed a deed of conveyance of the premises to the said Barton, on condition that he should discharge the defendant from his liability for said mortgage debt. This condition has never been performed. No time was limited for the performance, at the time of the conveyance, but it was afterwards agreed that it might be postponed until the spring after the conveyance. If Barton, therefore,

has not obtained a good and absolute title to the premises, the defect is owing to his own neglect or inability to perform the condition, and not to any fault of the defendant.   The condition should have been performed in the spring of 1835, or if that was not so understood by the parties, it should have been performed within a reasonable time.   The defendant never took possession of the premises, until November 1835.   And he had ever before been ready and desirous to complete the agreement, and offered to pay $20 to Barton, if he would exonerate him from his liability for the mortgage debt, according to his contract and the condition of the deed.

Considering these facts, and all the circumstances of the case, we are of the opinion, that the defendant had a right to reclaim the property conditionally conveyed to Barton ; and that if he or the plaintiffs have suffered any loss or damage thereby, it is *damnum absque injuriâ.*

By the condition of the deed it was provided, that if Barton should fail to pay said mortgage, the said deed was to " be and remain in all respects null and void."   This was in conformity with the original agreement with the plaintiffs, which agreement the defendant has at all times been ready to perform on his part. It is true that he refused to carry it into effect for the benefit of Prichard and Richmond ; but he was under no obligation to treat with them, or to sanction the transfer of Barton's interest to them.

We are also of the opinion, that after the long and unreasonable neglect of Barton to perform the condition of the deed to him, the defendant was not bound, by any principle of law or equity, to renew the contract, either with Barton, or with the plaintiffs.   As therefore no neglect or refusal to fulfil the oral agreement made by the defendant has been proved, it is very clear, we think, that this action cannot be maintained.

*Nonsuit to stand*